1

Jeffrey Jue
4391 Gannet Cir, Unit 16
Las Vegas, Nevada 89103
T: 831.216.8269
E-mail: Jeff.L.Jue@gmail.com

2

3

4

And

5

Jun Wen
4391 Gannet Cir, Unit 16
Las Vegas, Nevada 89103
T: 310.940.6424
E-mail: Xx19840210@gmail.com

6

7

8

*Defendants In Proper Person*

9

10

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

11

12

SOYLENT NUTRITION, INC., a
Delaware corporation

13

                        Plaintiff,

14

v.

15

JEFFREY LI JUE, an individual, and
WEN JUN, an individual; and DOES
1 – 10, inclusive.

16

17

                        Defendants.

18

19

| |
| Case No.:    2:19-cv-01887 |
| **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)** |
| **ORAL ARGUMENT REQUESTED** |
| Date of Hearing: |
| Time of Hearing: |

20

21

        Pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(6) and 9(b), defendants Jeffrey

22

Li Jue and Jun Wen, (collectively, "Defendants") move to dismiss all counts of the Plaintiff's

23

Complaint. For the reasons set forth in their memorandum of points and authorities below,

24

Defendants respectfully request that the Court dismiss Plaintiff's action with prejudice and award

25

Defendants' such relief as may be just and proper.

26

        This Motion is made and based upon the following Memorandum of Points and Authorities,

27

the papers and pleadings on file herein, and any oral argument permitted by the Court.

28

FILED _____     _____ RECEIVED
ENTERED _____     _____ SERVED ON
COUNSEL/PARTIES OF RECORD

JAN 1 4 2020

CLERK US DISTRICT COURT
DISTRICT OF NEVADA
BY:_____DEPUTY

DATED this 14th day of January, 2020.

By: _____
Jeffrey Jue

Digitally signed
by Jeffrey Jue
Date: 2020.01.13
23:57:20 -08'00'

And

By: _____
Jun Wen

Digitally signed by Jun
Wen
Date: 2020.01.14 00:08:57
-08'00'

*Defendants In Proper Person*

## **NOTICE OF MOTION**

PLEASE TAKE NOTICE that the forgoing Motion will come on for hearing before the Court on the _____ day of _____, 2020, at the hour of ____:____ __.m. or as soon thereafter as the parties can be heard.

DATED this 14th day of January, 2020.

By: _____
Jeffrey Jue

Digitally signed
by Jeffrey Jue
Date: 2020.01.13
23:57:51 -08'00'

And

By: _____
Jun Wen

Digitally signed by
Jun Wen
Date: 2020.01.14
00:09:31 -08'00'

*Defendants In Proper Person*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Plaintiff seeks to prevent Defendants from using a foreign trademark registration held by a third-party company in the People's Republic of China ("China"). To get this extraordinary relief, Plaintiff attempts to invoke the jurisdiction of this U.S. district court in Nevada, and Plaintiff demands the extraterritorial application of U.S. law. And Plaintiff does this without alleging any plausible effect on American foreign commerce, and without regard to the affront such enforcement would present to the laws and sovereignty of the foreign nation involved.

While Plaintiff makes conclusory allegations of harm to its U.S. business and to prospective economic advantage without basis, it does not allege that any use of the disputed trademark by Defendants will enter or otherwise affect commerce within the United States. Nor can Plaintiff assert any basis on which a U.S. company can, in complete disregard for the law of a sovereign foreign nation, invoke U.S. law to preclude the registration of trademarks in that foreign nation. Because there is no legal basis for this effort to turn the Lanham Act, not to mention Nevada state law, into an international law of trademark protection, presumably to be enforced in United States federal courts, this case is properly dismissed under Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction, or alternatively, under Fed. R. Civ. P. 12(b)(6) for failure to state a claim.[1]

Moreover, in alleging fraud, Plaintiff fails to plead circumstances constituting fraud with particularity by improperly lumping Defendants together with the third-party company that owns the foreign trademark registration at issue, despite the fact that Plaintiff does not allege that Defendants have any ownership or corporate position in the third-party company, and despite the fact that the third-party company is not named as a defendant in Plaintiff's Complaint.

---

[1]Defendants' arguments for the Rule 12(b)(6) dismissal advances the same arguments as those presented for the Rule 12(b)(1) dismissal. While the Ninth Circuit considers the question of whether to apply the Lanham Act extraterritorially as one of subject matter jurisdiction, *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 427 (9th Cir. 1977) (calling the test a "jurisdictional rule of reason" test"), recent case law out of the Third Circuit holds that the extraterritorial reach of U.S. antitrust laws – from which the extraterritorial test for applying the Lanham Act is derived – is a merits determination. *Animal Science Products, Inc. v. China Minmetals Corp.*, Case No. 10-228 at 14 (3d Cir. Aug. 17, 2011). In light of this, Defendants move for dismissal of Plaintiff's Complaint under both Rules 12(b)(1) and 12(b)(6).

1   Accordingly, Plaintiff's claims for fraud are also properly dismissed under Fed. R. Civ. P. 9(b) for

2   failure to state a claim upon which relief can be granted.

3   **BACKGROUND**

4   Plaintiff Soylent Nutrition, Inc. is a Delaware corporation that creates and sells dietary and

5   nutritional products that are "available to customers throughout the United States." (Comp. ¶¶ 1,

6   9, 12)

7   Plaintiff does not allege specifically or provide evidence that it sells any products in China.

8   Plaintiff only alleges vaguely that it "plans to expand[] its sales and marketing of products abroad,

9   including without limitation, in Hong Kong, European Union, India, Japan, Mexico, New Zealand,

10  Norway, Russia, Singapore, Switzerland, South Korea and United Kingdom." (*Id.* ¶¶ 22.) Plaintiff

11  provides no evidence that it and its products or trademarks are well-known in China.

12  Defendant Jeffrey Li Jue was the owner of a now dissolved Hong Kong company named

13  Archer Green, through which he provided IP consultant services to third-party clients, often in

14  collaboration with a China Trademark Agency formerly named Focus IP. (*Id.* ¶¶ 27, 28, 30-32.)

15  These IP services included assisting clients with filing formal applications to register trademarks

16  in China, sometimes using Archer Green as a proxy applicant/registrant for these clients'

17  trademark applications/registrations. (*See id.* ¶ 45-53.).

18  Archer Green filed one such trademark application for "SOYLENT" ("Disputed Mark"),

19  and subsequently transferred the corresponding China trademark registration to the trademark's

20  current registrant, a Chinese company named Beijing Tianyilv Company Limited ("Tianyilv").

21  (*Id.* ¶¶ 25, 29.) Plaintiff does not allege that Defendants have any ownership or corporate position

22  in Tianyilv.

23  Recently, Plaintiff applied to register "SOYLENT" as a trademark in China, but was

24  blocked as a result of Tianyilv's prior-filed trademark registration in China. (*Id.* ¶¶ 34.) Plaintiff

25  attempted to cancel Tianyilv's trademark registration in China, (*Id.* ¶¶ 35.) but in December 2018

26  the China Trademark Office (CTMO) rejected Plaintiff's attempted cancellation and upheld the

27  validity of Tianyilv's trademark registration as per **Exhibits A, B**.

28  Plaintiff filed its U.S. complaint ("Complaint") in response to the CTMO's decision to

uphold the validity of Tianyilv's "SOYLENT" trademark registration in China.  Plaintiff brings two claims under the Lanham Act: trademark infringement (Count I) and unfair competition and false designation of origin (Count II).  Plaintiff also brings two claims under Nevada common law: trademark infringement (Count III) and intentional interference with prospective economic advantage (Count IV). (*Id.* ¶¶ 55-99.)

Plaintiff alleges no specific "business" in China, but nevertheless alleges that Defendants' acts "have directly and proximately caused damage to Plaintiff's business in the United States, its prospective economic advantage in China, and its business reputation and goodwill." (*Id.* ¶ 97.) In wholly conclusory fashion, Plaintiff claims it has suffered "damages" and "irreparable harm" in the United States as a result of Defendants' actions. (*See id.* ¶¶ 43, 97.)  At the same time, Plaintiff expresses doubt in its Complaint that Tianyilv and Defendants have even used the "SOYLENT" trademark, (Comp ¶¶ 53.) but nevertheless alleges "a likelihood of consumer confusion." (Comp ¶¶ 24.)

Moreover, making broad assumptions and without providing any substantial evidence, Plaintiff alleges that Defendants "orchestrate, direct, and control the ownership and transfer" of Tianyilv's "SOYLENT" trademark registration. (*Id.* ¶¶ 41.)  At the same time, Plaintiff's does not allege that Defendants have any ownership or corporate position in Tianyilv, and Tianyilv is not named as a defendant in the Complaint despite Tianyilv being the current registrant of the trademark in China and Tianyilv being the only entity legally able to "assign and transfer … all rights, title, and interest in and to Chinese Trademark Registration Number 13546817" as prayed for by Plaintiff. (Prayer for Relief ¶ 11.)

## ARGUMENT

### I.  PLAINTIFF'S COMPLAINT MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION UNDER THE LANHAM ACT.

"A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears." *California ex rel. Younger v. Andrus*, 608 F.2d 1247, 1249 (9th Cir. 1979). As such, the burden rests on the plaintiff to prove that subject matter jurisdiction exists. *See id.*; *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n. 24 (9th Cir. 1977) ("It is

1    clear that plaintiffs bear the burden both of making an initial, prima facie showing of jurisdictional

2    facts at the pleading stage and of proving those facts by a preponderance at trial.") Plaintiff does

3    not – and cannot – meet its burden of establishing subject matter jurisdiction under the Lanham

4    Act. Therefore, Counts I and II must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

5          To meet its burden under Ninth Circuit case law, Plaintiff must plead sufficient facts to

6    satisfy the three-part "jurisdictional rule of reason" test the Ninth Circuit set forth in *Timberlane*

7    *Lbr. Co. v. Bank of America, N.T. & S.A.*, 549 F.2d 597 (9th Cir. 1976, as modified 1977)

8    (*Timberlane I*). *See Wells Fargo*, 556 F.2d at 427. First, Plaintiff must show that the alleged

9    violations have an effect on American foreign commerce; second, Plaintiff must demonstrate that

10   the effect is sufficiently great to present a cognizable injury to the plaintiff; and third, Plaintiff is

11   required to show that the interests of and links to American foreign commerce are sufficiently

12   strong in relation to those of other nations to justify an assertion of extraterritorial authority.

13   *Timberlane I*, 549 F.2d at 613-15.

14         Without this jurisdictional limitation, Lanham Act coverage would be improperly

15   overbroad, encompassing legitimate activities conducted outside of the United States pursuant to

16   the valid trademark laws of foreign jurisdictions. *See Gallup, Inc. v. Bus Research Bureau (Pvt.)*

17   *Ltd.*, 688 F. Supp. 2d 915, 922 (N.D. Cal. 2010) ("without this limitation, the jurisdictional rules

18   set forth [for the Lanham Act] lead to the overbroad and improper conclusion that subject matter

19   jurisdiction is proper over *any* website accessible to users in the United States over the Internet")

20   (emphasis in original).

21         Plaintiff's claims exceed the jurisdictional reach of the Lanham Act for two reasons. First,

22   Plaintiff does not plead facts demonstrating a sufficient effect on American foreign commerce

23   (*Timberlane I* factors No. 1 and No. 2). Second, the interests of and links to American foreign

24   commerce are insufficient to justify the extraterritorial application of the Lanham Act. (*Timberlane*

25   *I* factor No. 3).

26

27   A.    ***Timberlane Factor No. 1:*** **Plaintiff Does Not – And Cannot – allege "an effect on American foreign commerce" that is "sufficiently great to present a cognizable injury to the plaintiff"**

28

To satisfy the first two prongs of the *Timberlane I* test, Plaintiff must at a minimum plead sufficient facts demonstrating that the offending activities resulted in (1) allegedly infringing products entering the United States, see *Steele v. Bulova*, 344 U.S. 280, at 286-88 (1952); *Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 554-55 (9th Cir. 1992); or (2) allegedly infringing products displaced its foreign exports causing it actionable economic harm. *See Ocean Garden, Inc. v. Marktrade Co., Inc.*, 953 F.2d 500, 503 (9th Cir. 1991). Since Plaintiff does not and cannot meet the "effect on commerce" requirement by alleging and providing evidence that it exports any of its products to China, it must plead facts alleging that infringing products have entered the United States. It failed to do this.

Plaintiff has not been and will not continue to be damaged in the United States. Plaintiff pleads no facts supporting damage in the United States as a result of Defendants' alleged actions, and even admits it "is unable to ascertain the full extent of its damages, or the gains, profits and advantages that Defendants have obtained by reason of their wrongful conduct." (Comp. ¶¶ 78.) This is not a case in which designer watches were "filtered through the Mexican border into this country," bringing "about forbidden results within the United States." *See Steele*, 344 U.S. at 286-88 (first and only Supreme Court case applying the Lanham Act extraterritorially). Nor is this a case in which the defendants "knew that their counterfeit shoes went back to the United States with regular frequency" sales of which "decreased the sale of genuine REEBOK shoes in . . .the United States." *Reebok*, 970 F.2d at 554-55. This is not even a marginal case in which six of many thousands of polls conducted by a Pakistani polling organization under the name "Gallup Pakistan" were deemed newsworthy enough by American news organizations to be used in the United States. *Gallup*, 688 F.Supp.2d at 923 ("While there is no question that plaintiff has put forth evidence that defendant's activities in releasing poll results on the Gallup Pakistan website have had 'some effect' on [plaintiff Gallup USA's] trademark rights in the United States, there is little evidence on the record to find that defendant's extraterritorial activities have inflicted or will inflict a cognizable injury upon plaintiff in the United States."). Defendant Jun Wen's company "markets, sells, and advertises on their menu a 'Soylent Green' vegan drink" (Comp. ¶ 51.) for on-site consumption in China, i.e., drinks are prepared to order for the customer's immediate consumption

and are unsuitable for import into the United States from China—once mixed into a drink Tianyilv's "Soylent Green" cannot even pass through airport security. *See also Aurora*, 719 F. Supp. 2d at 1143 ("The present record does not support a finding that Aurora is likely to prove Ty's sales of Beani Boos in countries other than the United States has a significant effect on American foreign commerce"); *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 97 U.S.P.Q.2d 1178, (N.D. Cal. 2010) ("Plaintiff presented evidence that . . . Defendant's . . . sold counterfeit goods that were imported into the U.S. for delivery to U.S. customers").

Plaintiff attempts an end run on the "effect on commerce" requirement by alleging that the Defendants are U.S. residents who are coordinating their foreign activities from within the United States (Comp. ¶ 30.) (Plaintiff simultaneously alleges that Defendants reside in Thailand, *see Ex Parte* Motion to Serve Defendants Via Email (EFC No 10)). While citizenship is one of seven subfactors relevant under the third prong of the *Timberlane I* jurisdictional test,[2] the naked allegation that the infringing activities are "coordinated" from within the United States, (*id.*), does not satisfy the jurisdictional requirement that there be an effect on commerce. In *Reebok*, for example, the court found that the defendant, a U.S. citizen, "organized and directed the manufacture of counterfeit REEBOK shoes from the United States *and* knew that their counterfeit shoes went back to the United States with regular frequency" decreasing sale of genuine Reebok shoes in the United States. 970 F.2d at 554-55 (emphasis added). Similarly, in *Van Doren*, beside finding that defendants "at least organize[d] and direct[ed] the manufacture of counterfeit shoes from the United States," the Court also found that (1) defendants knew the "counterfeit goods were to be re-imported into the United States," (2) the plaintiff owned and actively used the Mexican trademark for their goods, and (3) that the "the harm done by defendants to plaintiff's income and the commerce of the United States may be great." 1989 U.S. Dist. LEXIS 17323 at *4-*7.

Plaintiff's Complaint falls short of even the most basic requirement established by Ninth Circuit precedent—that the harmful effect on American foreign commerce cause "monetary injury in the United States to an American plaintiff." *See, e.g., Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 613 (9th Cir. 2010) (affirming dismissal of Lanham Act claims because plaintiff did not show

---

[2] Citizenship under the third prong of the *Timberlane I* jurisdictional test is discussed in Part I.B., *infra*.

that distribution of allegedly infringing CDs in England affected ticket sales for plaintiff musician's live performances in the United States); *see also Ocean Garden*, 953 F.2d at 503 (applying Lanham Act partly because plaintiff's foreign commerce was being displaced by infringing products causing it to lose "millions of dollars in revenues"). Throughout its Complaint, Plaintiff asserts that it "has been and will continue to be damaged in the United States" and that "Defendants' acts have caused Plaintiff irreparable harm in the United States." (*See, e.g.*, Comp. ¶¶ 43, 62, 75.) But Plaintiff alleges no underlying factual allegations to support these bald legal conclusions. Specifically, Plaintiff pleads no facts which show that Defendants' acts have caused Plaintiff to "los[e] sales in the United States." *Aurora World, Inc. v. Ty Inc.*, 719 F. Supp. 2d 1115, 1143 (C.D. Cal. 2009). Plaintiff merely pleads vaguely, and without providing evidence, that "[a]s a direct and proximate result of Defendants' wrongful conduct, Soylent has been and will continue to be damaged in the United States." (Comp. ¶¶ 62.)

The Ninth Circuit recently upheld the dismissal of a Lanham Act claim on this basis in *Love, supra.* In *Love*, former founding member of the Beach Boys Mike Love, suing under the Lanham Act, argued that the distribution of allegedly trademark infringing compact discs in England harmed ticket sales for his performances in the United States. Noting several defects in Love's complaint, the Court emphasized Love's failure "to introduce any evidence that [the compact discs] had ever entered the U.S. market." 611 F.3d at 608. The Court went on to say, "[e]ven if . . . European purchasers . . . mistakenly associate the . . . CD with Love . . . it is too great of a stretch to ask us, or a jury to believe that such confusion overseas resulted in [] decreased ticket sales in the United States." *Love* 611 F.3d at 608, 613.

Through intentionally vague pleading, Plaintiff obfuscates the fact that what it really is alleging is that Defendant "markets, sells, and advertises" the Disputed Mark *in China* likely causing "confusion among consumers" *in China,* which somehow – in ways that are neither alleged nor explained – resulted in "damages in the United States." (Comp. ¶¶ 42.) Plaintiff points to no instances of Defendants having engaged in the above acts and, as a result, can show none of the claimed damages. Even assuming, as the Court did in *Love*, confusion or mistake in China, Plaintiff

is still required to show actual economic harm to American foreign commerce.[3]  In fact, Plaintiff itself expresses doubt in its Complaint that Tianyilv and Defendants have even used the "SOYLENT" trademark in China, much less harmed American foreign commerce.  (Comp ¶¶ 53.)

Finally, Plaintiff has already properly sought a determination from the relevant foreign authorities as to its rights under the relevant trademarks, with the CTMO deciding that Tianyilv (and not Plaintiff) is the senior user of the "SOYLENT" trademark in China **as Exhibits A, B**. Tianyilv and Defendants are, at most, engaged in "wholly foreign commerce," which is not subject to the Lanham Act coverage. *See Star-Kist Foods, Inc. v. P.J. Rhodes & Co.,* 769 F.2d 1393, 1394 (9th Cir. 1985) (Kennedy, J.) (applying the Lanham Act to commerce to and from the United States but declining to apply the Act to commerce with the Philippines that was wholly outside of the United States given the fact that trademark proceedings were pending in the Philippines which would create a conflict with Philippine trademark law).

### B.    *Timberlane I* Factor No. 3: The Interests Of And Links To The Commerce Of Foreign Nations Outweigh Those Of U.S. Commerce

Even if Plaintiff could allege "an effect on American foreign commerce" that is "sufficiently great to present a cognizable injury to the plaintiff," it still could not establish subject matter jurisdiction under the third prong of the *Timberlane I* test. This third element requires consideration of seven sub-factors:

"[1] the degree of conflict with foreign law or policy, [2] the nationality or allegiance of the parties and the locations or principal places of business or corporations, [3] the extent to which enforcement by either state can be expected to achieve compliance, [4] the relative significance of effects on the United States

---

[3] The basic requirement of an "effect" is uniform across the circuits, though courts disagree as to the amount of the required effect. *See Atlanta Richfield Co. v. Arco Global Bus. Int'l Co.*, 150 F.3d 189, 192 n.4 (2d.Cir. 1998) (finding that the Second Circuit has "never applied the Lanham Act to extraterritorial conduct absent a substantial effect on United States commerce"). (One difference in the test employed by the various circuits to determine the extraterritorial application of the Lanham Act is the impact required on U.S. commerce. The Second and Eleventh Circuits require a "substantial effect" on American commerce while the Fifth and Ninth require "some effect." *Compare Vanity fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 642 (2d Cir.), *cert denied*, 352 U.S. 871 (1956) and *American Rice, Inc. v. Arkansas Rice Growers*, 701 F.2d 408, 414-15 (5th Cir. 1983) *with Int'l Café v. Hard Rock Café Int'l*, 252 F.3d 1274, 1278 (11th Cir. 2001) and *Wells Fargo*, 556 F.2d 406, 428 (9th Cir. 1977)).

as compared with those elsewhere, [5] the extent to which there is explicit purpose to harm or affect American commerce, [6] the foreseeability of such effect, and [7] the relative importance to the violations charged of conduct within the United States as compared with conduct abroad.

*Timberlane I*, 549 F.2d at 614. These factors weigh in favor of dismissal.

### 1. <u>Sub-factor No. 1: Extraterritorial Application of the Lanham Act creates conflicts with foreign law and interests.</u>

The facts as alleged weigh against extraterritorial application under the first sub-factor.

When a country has its own trademark laws, extraterritorial enforcement of trademark laws by U.S. courts is an "affront to [the foreign country's] sovereignty or law," *Ocean Garden,* 954 F.2d 500, 503 (9th Cir. 1991). The greater the possibility of conflict – for example, if determinations on the use of the trademarks is pending – the less the exercise of extraterritorial jurisdiction by U.S. Courts is justified. *Star-Kist*, 769 F.2d at 1396.

Plaintiff petitions this Court to impose U.S. law in the sovereign foreign jurisdiction of China. Imposing U.S. law presents a direct conflict with the law and interests of China in determining who has superior rights to the trademark. As the Ninth Circuit has stated,

> "[d]emonstration of a *present* and *direct* conflict between the laws of two nations . . . is unnecessary: it is a sufficiently cognizable interest under the *Timberlane* test for there to exist the *possibility* of a conflict between the law or policy of the United States and the law or policy of another nation."

*Reebok*, 970 F.2d at 555 n.2 (9th Cir. 1992) (emphasis added.)

The requirement of a "possibility of conflict" is easily met here. This case, is virtually indistinguishable from the Ninth Circuit's decision in *Star-Kist*.769 F.2d 1393 (9th Cir. 1985), in which the alleged infringing party petitioned to cancel Star-Kist's trademark registrations in the Philippines. The *Star-Kist* Court refused to apply the Lanham Act to wholly foreign commerce because that "could create a conflict with Philippine patent and trademark law and with pending proceedings in that country. *Id.* at 1396 (citing *Wells Fargo*, 556 F.2d at 428-29 (the existence of

a conflict with a foreign trademark registration weighs against extraterritorial application of the Lanham Act)). *See also Love v. The Mail on Sunday*, Case No. CV 05-7798 ABC (PJWx) at 5 (Feb. 8, 2007 Order) (hereinafter "*Love* Order"), *aff'd sub nom*, *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601 ("English law governing Plaintiff's claims differs significantly from the U.S. law he invokes," and "[g]iven the narrower scope of the cause of action, the Court should not apply U.S. trademark law, because the conduct might have been lawful in the country in which it occurred").

Here, the court need not undertake any scholarly examination of foreign law to identify the obvious conflict. Defendants have acted consistently with foreign law in a foreign country. In essence, Plaintiff alleges the very act of Tianyilv and Defendants exercising their rights to seek and maintain trademark registrations under Chinese law is, in and of itself, a violation of U.S. law. Plaintiff can point to no illegal acts that Defendants have undertaken in China, because Defendants' conduct is completely lawful in that sovereign foreign nation, as evidenced most prominently by the China Trademark Office's approval of Tianyilv's "SOYLENT" trademark registration in China.

Strong principles of comity support dismissal of this action, where Plaintiff brings suit in the United States and seeks extraterritorial application of U.S. law in order to prevent foreign cancellation and registration of trademarks. The foundational principle of trademark law is territoriality: the trademark laws of one country generally do not apply within the borders of another. *See* G. Haight & P. Cantanzanoa, *The Effects of Global Priority of Trademark Rights*, 91 MASS. L. REV. 18, 21-24 (2007). Therefore, if an American business seeks to promote and sell its goods or services abroad under a particular trademark, it must acquire trademark rights pursuant to the laws of the foreign jurisdictions. *Id.* at 19. This preserves international comity, which is incorporated in the third element of the *Timberlane I* test to prevent intrusive application of U.S. law.[4]

---

[4] Applying trademark law extraterritorially can lead to a "complicated and unpredictable system where trademark holders may not know which country's trademark laws apply." A. Popov, *Note: Watering Down Steele v. Bulova To Reach Internet Commerce Overseas, Analyzing the Lanham Act's Extraterritorial Reach Under International Law*, 77 S. Cal. Rev. 705, 727 (2004).

1   To protect and maintain their trademarks in foreign countries, companies must register

2   their trademarks in various countries and/or with organizations such as the World Intellectual

3   Property Organization ("WIPO"). And, should a dispute over the registration or use of a trademark

4   arise, the matter is then litigated in the country in which the trademark is being contested.[5] Plaintiff

5   was not the first party to apply to register the Disputed Mark in China, yet Plaintiff petitions this

6   Court to interrupt and override the lawful processes that China has established to determine

7   domestic trademark rights.

8

9                   2.   The citizenship of defendants cannot by itself support the extraterritorial
application of the Lanham Act

10   Plaintiff's only allegations regarding any of the *Timberlane I* comity sub-factors – that

11   Defendants Jue and Wen are Nevada residents, and that Plaintiff is a Delaware corporation with

12   its principal place of business in California – cannot alone establish subject matter jurisdiction for

13   its Lanham Act claims. Case law applying Lanham Act extraterritorially shows that nationality of

14   the parties is only one factor courts take into account, a factor that does not stand alone to grant

15   jurisdiction, especially where, as is the case here, other factors counsel against it.

16   In *Aurora* and *Star-Kist*, the defendants were U.S. corporations with their principal place

17   of business in the U.S., and in neither case did the courts apply the Lanham Act extraterritorially.

18   In *Aurora*, the Central District of California found that the U.S. citizenship of defendant, a

19   Delaware corporation, was not sufficient to overcome a finding that there was no effect on U.S.

20   commerce. After noting that plaintiff "adduced no evidence that it has lost sales in the United

21   States," 719 F. Supp. at 1143, the Central District, in its analysis of the seven comity sub-factors

22   of *Timberlane I*, stated that "[t]he only evidence or argument Aurora proffers regarding any of

23   these factors are allegations in its complaint that it is a California corporation . . . and that Ty is a

24   Delaware corporation." *Id.* at 1144.In *Star-Kist*, the Ninth Circuit held that it would not apply the

25

26      [5]Not even the most well-known brands are exempt from this principle. For example, McDonald's lost its
trademark for non-use in South Africa and initiated litigation in that country's court system to regain it. McDonald's

27   Corp. v. Joburgers Drive-Inn Restaurant (Pty), 1997 (1) SA 1 (A) (Supreme Court of South Africa, App. Div.).
Similarly, Budweiser also has actively protected its trademarks in various foreign venues, even losing the trademark

28   "King of Beers" to a Czech brewery in numerous foreign jurisdictions. *See* J. Smith, Comment: Budweiser or
Budweiser?, 32 J. MARSHALL L. REV 1251 (1999).

Lanham Act to wholly foreign commerce, in spite of defendant being a California corporation. Moreover, unlike in *Aurora*, the court in *Star-Kist* found the first two elements of the *Timberlane I* test satisfied, but, as in *Aurora*, that the third was not met. 769 F.2d at 1395.

As discussed in connection with the other requirements of the *Timberlane I* test, the factors that compelled the courts in *Aurora* and *Star-Kist* not to apply the Lanham Act extraterritorially are also present in this case. Specifically, there is not a sufficient effect on American foreign commerce, (Part I.A., *supra*), and in fact Plaintiff has already petitioned the pertinent foreign authorities to determine superior rights in the trademarks.[6]

An examination of Ninth Circuit cases applying the Act extraterritorially where defendants were U.S. citizens demonstrates that citizenship was of little import. In *Reebok,* for example, the court observed that the defendants were U.S. citizens, but it also found that the counterfeit items entered a "Los Angeles foreign trade zone" and that other counterfeit items "were offered for sale to buyers in the United States at various times." *Reebok Int'l Ltd v. American Sales Corp.*, 11 USPQD.2d at 1230-31. In *Ocean Garden*, the defendant, a U.S. corporation, argued that the district court lacked jurisdiction because the company's allegedly infringing canned seafood was "exclusively harvested, processed, and canned in Mexico" and "sold exclusively in the Far East." *Id.* The Court disagreed, persuaded by plaintiff's argument that it was "losing millions of dollars in revenues through trademark infringement." *Id.* at 503. This satisfied the first two elements in the *Timberlane I* test. Moreover, the Court went on to find that the plaintiff also satisfied *all* of the seven sub-factors of the third element. *Ocean Garden*, 953 F.2d at 504.

These, and many others, demonstrate convincingly that it is insufficient to base subject matter jurisdiction on the defendants' citizenship and/or corporate principal place of business.

3.   Plaintiff fails the rest of the *Timberlane I sub-factors*

The facts as alleged weigh against extraterritorial application under the rest of the *Timberlane I* sub-factors as well.

First, with respect to the third sub-factor, it is important to note that the "enforceability" of

---

[6] As discussed above under the "conflict" sub-factor, the *Star-Kist* court attached significant weight to the fact that a trademark dispute was pending in the Philippine Patent Office. 769 F.2d at 1396.

the court's order is not merely a question of whether the court has personal jurisdiction over the defendants. As the Supreme Court held in *Steele,* the enforceability question is inextricably intertwined with the question of whether enforcement would conflict with the law of a foreign sovereign nation: "*Where, as here, there can be no interference with the sovereignty of another nation,* the District Court in exercising its equity powers may command persons properly before it to cease or perform acts outside its territorial jurisdiction." *Steele,* 344 U.S. at 289 (emphasis added.) Here, Plaintiff seeks a worldwide injunction that would in essence prohibit Defendants from complying with the trademark registration or cancellation procedures established under foreign law. (Prayer for Relief ¶ 2.B: requesting that "Defendants, their agents, employees, representatives, partners, joint ventures, and/or anyone acting on behalf of, or in concert with Defendants from: … attempting to register the Soylent Mark in the United States or in any jurisdiction outside of the United States."). Plaintiff further asks the court to retain jurisdiction so that Defendants are never able to exercise those rights under foreign law. (Prayer ¶ 2.C.). If that weren't enough of an affront to a sovereign nation, Plaintiff seeks treble damages (Prayer ¶ 11) and punitive damages (Prayer ¶ 13) against Defendants for exercising their rights under foreign law. In short, Plaintiff simply cannot sustain its burden of demonstrating how a ruling by this Court would be enforced without improper conflict.[7]

Here again, the decision in *Aurora,* 719 F. Supp. 2d at 1144 n. 70, is instructive. The defendant in *Aurora* was incorporated in the U.S. with its principal place of business in the U.S. Nonetheless, the court found that "Aurora has neither pointed the court to the law of foreign jurisdictions indicating that its order would be enforceable abroad, nor has it necessarily indicated an exhaustive list of countries in which such an international [order] would be enforced." To the

---

[7] Relying on *Steele,* the Ninth Circuit recently applied this same principle in the domestic context. In *United States v. AMC Entertainment, Inc.,* 546 F.3d 760 (9th Cir. 2008), the court interpreted a federal regulation that applied to AMC theaters across the country. The Ninth Circuit recognized that its interpretation of the regulation conflicted with the interpretation by the U.S. Court of Appeals for the Fifth Circuit. Thus, even though the court clearly had personal jurisdiction over the defendant, the Ninth Circuit declined to extend the injunction to the defendant's theaters that were operating in the Fifth Circuit: "when exercising its equitable powers to issue an injunction, a court must be mindful of any effect its decision might have outside its jurisdiction. Courts ordinarily should not award injunctive relief that would cause substantial interference with another court's sovereignty." 546 F.3d at 770-71 (citing *Steele,* 344 U.S. at 289).

contrary, it is reasonable to assume that since the dispute over the trademarks occurs in China, authorities in that sovereign foreign nation are better positioned than this Court to provide effective relief. *See Love* Order at 5 ("since the majority of the allegedly infringing conduct occurred in the United Kingdom, a court there is better-positioned than this Court to provide effective relief"). In other words, it is not reasonable for this Court to monitor a court ruling across different countries.

Second, the allegations in the Complaint are inadequate for the court to weigh the fourth sub-factor, since Plaintiffs does not plead facts which demonstrate a sufficient effect on commerce. Therefore, the significance of effects on the United States, which, on the pleadings, is de minimis, cannot outweigh the effects in foreign countries. *See id.* (the existence of the effect on commerce in the U.K. . . . far exceeds the effect, if any, that the activity had on U.S. commerce"); *see also Star-Kist*, 769 F.2d at 1396 ("The effect on the Unites States commerce from the alleged illegal use of the trademarks . . . is relatively insignificant").

Next, Plaintiff has failed to plead facts showing that Defendants' purpose was to harm or affect U.S. commerce. Plaintiff has not alleged any use of Plaintiff's Marks by Defendants in the U.S., Tianyilv and Defendants have shown deference for the proper process for determining rights to the Disputed Mark in China, and Tianyilv and Defendants' activities related to the Disputed Mark have all been conducted in China and completely lawful in that sovereign foreign nation. *See Gallup*, 688 F. Supp. at 923 ("both plaintiff and defendant are in the process of establishing their rights to the GALLUP mark within Pakistan's own trademark system").

Plaintiff also fails the sixth sub-factor. Whether any effect is foreseeable "is of no import here, because there is no evidence of any effect." *Love* Order at 5.

Lastly, since Plaintiff fails to demonstrate that any infringing conduct affecting its commerce has occurred, or that Defendants' overseas conduct is illegal, any de minimis United States interest in the conduct is far outweighed by the interest of a sovereign foreign nation, especially since China's trademark systems are already determining the rights in the relevant trademark. *See Gallup*, 688 F. Supp. at 924 ("there is a *substantial* risk of conflict with foreign law, as the parties' trademark rights in Pakistan are being disputed contemporaneously with this action") (citing *Star-Kist*, 769 F.2d at 1396 (declining to apply the Lanham Act because it would

create conflict with Philippine trademark law, given the fact that trademark proceedings were pending in that country)).

## II.    PLAINTIFF FAILS TO PLEAD FACTS SUFFICIENT TO STATE A PLAUSIBLE CLAIM UNDER RULE 12(b)(6)

Should this Court find that determining whether the Lanham Act applies extraterritorially is a merits question instead of a jurisdictional one, *cf. Animal Science Products, Inc. v. China Minmetals Corp.*, Case No. 10-228 at 14 (3d Cir. Aug. 17, 2011), it should dismiss Plaintiff's Complaint for failure to state a claim for the same reasons as discussed above.

Plaintiff's Complaint is wholly devoid of facts which show how Defendants have harmed it and full of legal conclusions that it has suffered harm and irreparable injury. Plaintiff's factual allegations do not show, for the same reasons as discussed above, how: (1) Defendants' conduct has adversely affected commerce; (2) that any adverse effect on commerce is sufficiently great to present cognizable injury; and (3) that the interests of and links to American foreign commerce are sufficiently strong in relation to those of other nations to justify an assertion of extraterritorial authority. Therefore, in the alternative, this Court should dismiss this case pursuant to Rule 12(b)(6). In short, Plaintiff has pled no factual allegations that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In fact, its allegations are "no more than conclusions . . . not entitled to the assumption of truth." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).

Plaintiff's entire Complaint is based "on information and belief." "[I]nformation and belief" "is not a recognized pleading device" under the federal rules and, in light of Rule 11's more detailed requirements, "at best would constitute surplusage." *Delphix Corp. v. Actifo Inc.*, No. C 13-4613-RS (N.D. Cal. Mar. 19, 2014), slip op. at 2. If the phrase is used selectively to qualify some allegations and not others, it implies that the pleader "likely lacks knowledge of underlying facts to support the assertion, and is instead engaging in speculation to an undue degree." *Id.*, slip op. at 3. Under federal pleading standards, as described by the Supreme Court in the *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a pleading

must contain factual matter sufficient to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 663.  Simply adding the boilerplate phrase "on information and belief" does not transform a conclusory pleading into one that is factually supported.

Specifically, Plaintiff does not allege that Defendants have any ownership or corporate position in Tianyilv, but Plaintiff nevertheless alleges, without providing any factual allegations or substantive evidence in support, that Defendants "orchestrate, direct, and control the ownership and transfer" of Tianyilv's "SOYLENT" trademark registration. (*Id.* ¶¶ 41.)  Moreover, Plaintiff does not name Tianyilv as a defendant in the Complaint, despite Tianyilv being the current registrant of the Disputed Mark in China, the primary party alleged to be using the Disputed Mark in China, and the only entity legally able to "assign and transfer … all rights, title, and interest in and to Chinese Trademark Registration Number 13546817" as prayed for by Plaintiff. (Prayer for Relief ¶ 11.)  Accordingly, by merely asserting conclusions without evidence, Plaintiff has failed to plead sufficient facts to state a claim for relief from Defendants for any alleged acts of infringement or other unlawful conduct by Tianyilv.

Although a court generally accepts plaintiffs' allegations as true, the court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). Furthermore, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b)

## III.   PLAINTIFF FAILS TO PLEAD FRAUD WITH PARTICULARITY AS MANDATED BY RULE 9(B)

"Federal Rule of Civil Procedure Rule 9(b) requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations'" when pleading common law fraud. *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (quoting *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)). The purpose of Rule 9(b)'s heightened pleading standard is to "give defendants notice of

the particular misconduct which is alleged to constitute the fraud charged so they can defend against the charge and not just deny that they have done anything wrong." *Id.* (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)) (internal quotations omitted).  Plaintiff does not – and cannot — meet its burden of stating with particularity such circumstances, because it has improperly lumped multiple Defendants together with a third-party that is not named as a defendant in the Complaint.  Accordingly, all of Plaintiff's fraud-based claims against Defendants for alleged conduct by Tianyilv must be dismissed pursuant to Fed. R. Civ. P. 9(b).

To meet its burden under Ninth Circuit case law in the case of multiple defendants, Plaintiff must "differentiate their allegations when suing more than one defendant. . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (citations omitted).  "Rule 9(b) does not allow a complaint to merely lump multiple defendants together. *Id.*  Swartz, 476 F.3d at 764-65 (citations and quotations omitted).

Plaintiff's failure to differentiate allegations of fraud is readily apparent here, where such allegations are largely based on alleged fraud by Tianyilv, the third-party company that is the current registrant of the Disputed Mark in China, that is not named as a defendant in the Complaint, and in which Plaintiff does not allege Defendants have any ownership or corporate position.  (Comp. ¶¶ 35-40, 53, 95, 98.)  Plaintiff alleges, without any substantive evidence, that fraudulent conduct by Tianyilv was conducted at the "direction" of Defendants, and thereby concludes "Defendants are guilty of ... fraud." (*Id.* ¶ 98.)  "[M]erely attributing one defendant's fraudulent actions to codefendants is not enough to state claim for fraud against codefendants." *United States v. Corinthian Colls.*, 655 F.3d 984, 998 (9th Cir. 2011).  Here, Plaintiff goes a step further afield by attributing to Defendants the allegedly fraudulent conduct of a third party that is not even named as a defendant.

## IV.  PLAINTIFF'S STATE LAW CLAIMS MUST ALSO BE DISMISSED.

Diversity of citizenship is lacking here. Plaintiff predicates jurisdiction over its state law claims upon 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a), because it is a civil action involving a claim for unfair competition joined with claims for trademark infringement arising under the

Lanham Act, and Plaintiff further asserts that the court has supplemental jurisdiction over all other claims pursuant to 28 U.S.C. § 1367(a). (Comp. ¶¶ 7.) Neither statutory provision provides subject matter jurisdiction for state law claims where the federal claim has been dismissed for lack of jurisdiction. *See Herman Family Revocable Trust v. Teddy Bear*, 254 F.3d 802, 806 (9th Cir. 2001) (dismissal of all Federal claims under Rule 12(b)(1) for lack of subject matter jurisdiction precludes the exercise of supplemental jurisdiction); *Van Camp Sea Food Co. v. Cohn-Hopkins*, 56 F.2d 797, 799 (9th Cir. 1932) (where federal court's jurisdiction was predicated on infringement of trademark, decision that trademark was invalid precluded further consideration of question of unfair competition because of lack of jurisdiction).

That is especially true here, where Nevada law embodies the presumption against the extraterritorial application of its laws and statutes. *See Risinger v. SOC LLC,* 936 F.Supp.2d 1235 (2013) ("Although the provisions [plaintiff] does sue under … have no discernible textual limitation, they still cannot be applied extraterritorially in light of the presumption against extraterritoriality."). *See also Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal. 4th 1036, 1060 n. 20 (1999); *Churchill Vill., L.L.C. v. Gen. Elec. Co.*, 169 F. Supp. 2d 1119, 1126 (N.D. Cal. 2000) *aff'd*, 361 F.3d 566 (9th Cir. 2004). The presumption has been applied specifically to unfair competition claims, *et seq. Churchill,* 169 F. Supp.2d at 1126. Such a presumption is consistent with the "longstanding principle of American law" that "[w]hen a statute gives no clear indication of an extraterritorial application, it has none." *Morrison v. Australia Nat'l Bank, Ltd.,* 130 S.Ct. 2869, 2877-78 (2010) (internal quotation omitted.)

This Court should also dismiss the state law claims if it dismisses the federal claims under Rule 12(b)(6). Section 1367 provides that the district court may decline to exercise supplemental jurisdiction over a state law claim "where the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). While a federal court generally retains discretion to exercise supplemental jurisdiction over state law claims after dismissing the federal law claims for failure to state a claim, *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 129 S. Ct. 1862, 1867 (2009), the factors to be considered – judicial economy, convenience, fairness, and comity – are presumed to be in favor of declining to exercise jurisdiction over the remaining state law claims. *Sanford v.*

1  *MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010). *See Ecodisc Technology AG. v. DVD*

2  *Format/Logo Licensing Corp.* 711 F.Supp.2d 1074, 1085 (C.D. Cal. 2011) ("In the absence of a

3  viable federal claim, the Court will decline to exercise supplemental jurisdiction"). Because in this

4  action the laws of a sovereign foreign nation are implicated, comity weighs heavily against this

5  Court exercising jurisdiction over the state law claims. Furthermore, as noted above, Nevada law

6  embodies the presumption against the extraterritorial application of its laws and statutes.

7          Plaintiff fails to allege any facts to overcome the presumption against extraterritorial

8  application of Nevada law. To the contrary, the complaint raises obvious comity concerns if

9  Nevada law is applied. When a federal court exercises supplemental jurisdiction over state law

10  claims, the court applies the choice-of-law rules of the forum state, in this case Nevada. *Paracor*

11  *Fin., Inc., v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1164 (9th Cir. 1996). Nevada applies the

12  "substantial relationship" test to resolve conflict-of-law questions.  Progressive Gulf Ins. Co. v.

13  Faehnrich, 327 P.3d 1061 (Nev. 2014). "Under [the substantial relationship test], the state whose

14  law is applied must have a substantial relationship with the transaction." *Id.*

15          Plaintiff pleads no facts sufficient to establish that Defendants acts in China have a

16  substantial relationship with Nevada state law.  Moreover, Plaintiff alleges no facts showing

17  whether the laws of Nevada and China are similar or different; it does not demonstrate to this Court

18  whether a true conflict with foreign laws is avoided; and lastly, it does not demonstrate that Nevada

19  law should be applied because Nevada's interest is more impaired when compared with the

20  interests of the sovereign foreign nation in question.  In this case, China clearly has a materially

21  greater interest than Nevada in making determinations related to registration of trademarks in

22  China for use in commerce in China.

23          . . .

24          . . .

25          . . .

26          . . .

27          . . .

28          . . .

## CONCLUSION

For the foregoing reasons, Plaintiff's Complaint should be dismissed in its entirety without leave to amend.

DATED this 14th day of January, 2020.

Respectfully submitted:

Digitally signed by Jeffrey Jue
Date: 2020.01.13 23:58:23 -08'00'

By: _____
Jeffrey Jue
4391 Gannet Cir, Unit 16
Las Vegas, Nevada 89103
T: 831.216.8269
E-mail: Jeff.L.Jue@gmail.com

And

Digitally signed by Jun Wen
Date: 2020.01.14 00:10:05 -08'00'

By: _____
Jun Wen
4391 Gannet Cir, Unit 16
Las Vegas, Nevada 89103
T: 310.940.6424
E-mail: Xx19840210@gmail.com

*Defendants In Proper Person*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 14th day of January, 2020, service of the forgoing **DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) and 12(b)(6)** was made by depositing a true and correct copy in the U.S. Mail, first class postage prepaid, and addressed to the following at their last known address:

Michael J. McCue, Esq.
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169
*Attorney for Plaintiff*

Lisa M. Martens, Esq.
SHEPPARD, MULLIN, RICHTER & HAMPTON, LLP
12275 El Camino Real, Suite 200
San Diego, CA 92130-2006

By: _____
Jeffrey Jue

Digitally signed by Jeffrey Jue
Date: 2020.01.13 23:58:47 -08'00'

# EXHIBIT A

# EXHIBIT A

# EXHIBIT A



*CXSN20180000012295CSJX01*

# 国家工商行政管理总局商标局

商标撤三字[2018]第Y019288号

### 关于第13546817号第5类"SOYLENT"注册商标
### 连续三年不使用撤销申请的决定

罗莎食品公司：

北京恬益绿科技有限公司：

　　罗莎食品公司依据《中华人民共和国商标法》第四十九条的规定，以无正当理由连续三年不使用为由，委托思朴知识产权代理（上海）有限公司于2018年03月12日向我局申请撤销北京恬益绿科技有限公司第13546817号第5类"SOYLENT"商标在"医用营养食物"等全部核定使用商品上的注册。经审查，我局予以受理，并通知北京恬益绿科技有限公司在收到我局通知之日起2个月内向我局提交其在2015年03月12日至2018年03月11日期间使用该商标的证据材料。

　　北京恬益绿科技有限公司委托北京瀚仁知识产权代理事务所（普通合伙）在指定期限内向我局提交了相关证据材料。我局经审查认为，北京恬益绿科技有限公司提供的商标使用证据有效，罗莎食品公司申请撤销理由不能成立。根据商标法第四十九条及商标法实施条例第六十六条、第六十七条的规定，我局决定：驳回罗莎食品公司的撤销申请，第13546817号第5类"SOYLENT"注册商标不予撤销。

　　根据《中华人民共和国商标法》第五十四条的规定，撤销申请人罗莎食品公司如对我局决定不服，可以自收到本决定之日起十五日内向国家工商行政管理总局商标评审委员会申请复审。

主送：思朴知识产权代理（上海）有限公司；北京瀚仁知识产权代理事务所（普通合伙）
注：请尽快通知商标注册人。若无法通知，抄送方无需退回此函。

# 北京市

核对员:索颖

发文时间：2018-12-06

| 注册号 | 申请号 | 书式名称 | 签字 | 备注 |
|---|---|---|---|---|
| 13546817 | 20180000012295 | 关于商标继续有效的 | | |

本打印操作共打印　1　件　　核对员:索颖　　1/1





# EXHIBIT B

# EXHIBIT B

# EXHIBIT B

# Trademark Office under the State Administration for Industry and Commerce

## Cancellation [2018] No.Y019288

**The decision of the registered trademark "SOYLENT", that is Class 5, NO.13546817, of cancellation of not using for three years**

Rosa Foods, Inc.:

Beijing Tianyilv limited Company:

Under the Trademark Law of the People's Republic of China, Rosa Foods, Inc. entrusted Sipu Zhishi Chanquan Limited Company to submit a request for cancellation of the registration of "SOYLENT" that is Class 5, NO.13546817 owned by Beijing Tianyilv Limited Company for not using trademark "SOYLENT" for three years continuously. After reviewing the submission, the China Trademark Office (CTMO) started investigating and notified Beijing Tianyilv Limited Company to, within two months of receiving the notice, present evidence of use of the "SOYLENT" trademark between 03/12/2015 and 03/11/2018.

Beijing Tianyilv Limited Company entrusted Hanray Law Firm to submit substantial evidence. After reviewing the evidence, we, CTMO, believe that the evidence provided by Beijing Tianyilv Limited Company is valid and the reasons for cancellation cited by Rosa Foods, Inc. are invalid. According to Rule 49 in the China Trademark Law and Rules 66

and 67 in the China Trademark Law Implementing Regulations, we, CTMO, finally decide that CTMO rejects the Rosa Food's application to cancel trademark "SOYLENT", and the China trademark registration for "SOYLENT" shall not be cancelled.

Under the Trademark Law of the People's Republic of China, Rosa Foods, Inc. can appeal this decision after receiving this notification in next fifteen days, if it refuses to accept the CTMO's decision.

12/04/2018

Stamped by Trademark Office-

under the State Administration for Industry and Commerce

Send to Sipu Zhishi Chanquan Limited Company and Hanray Law Firm.
Please notice the trademark's register as soon as possible. If impossible, no need to return this notification.

# BEIJING CITY

Checked  by  Ying  Suo

Published  by  12/06/2018

| SERIAL # | APPLICATION # | TITLE | SIGNATURE | OTHERS |
|---|---|---|---|---|
| 13546817 | 20180000012295 | Continue being valid on | | |